Cite as 2022 Ark. App. 408

# ARKANSAS COURT OF APPEALS
## DIVISION III
#### No. CV-21-571

| | |
|---|---|
| IN THE MATTEROF THE ADOPTION OF MINOR CHILD | Opinion Delivered October 19, 2022 |
| | APPEAL FROM THE WASHINGTON COUNTY CIRCUIT COURT [NO. 72PR-20-996] |
| MANUEL CRUZ CERVANTEZ APPELLANT | |
| V. | HONORABLE JOHN C. THREET, JUDGE |
| CARLA IRENE TREJO SEGOVIA AND EDGAR ULISES RUIZ PACHECO APPELLEES | REVERSED AND DISMISSED |

**STEPHANIE POTTER BARRETT, Judge**

Manuel Cervantez appeals the order of the Washington County Circuit Court, finding his consent to the adoption of his minor child (hereinafter, "Minor Child") was not required. Specifically, Manuel argues the circuit court's decision was clearly erroneous because he did not voluntarily, willfully, arbitrarily, and without adequate excuse fail to maintain communication with his child. We reverse and dismiss.

The parties in this case, Manuel Cervantez ("Manuel") and Carla Segovia ("Carla"), began dating in high school and were eventually married. In February 2016, Carla and Manuel separated while Carla was eight months pregnant. On April 30, 2016, Carla gave birth to their son. Manuel and Carla divorced on May 16, 2018. Following the divorce,

Manuel and Carla continued a sexual relationship and agreed to a transitional visitation schedule. The transitional visitation schedule implemented four phases: (1) during the first two weeks there would be two two-hour supervised visits; (2) during weeks three to six, there would be four four-hour unsupervised visits; (3) during weeks seven to ten, there would be unsupervised visitation each Saturday from 9:00 a.m. to 12:00 p.m.; and (4) thereafter, Manuel would receive standard visitation. Only the first phase of the transitional visitation schedule was completed between Manuel and Minor Child, although Manuel continued to pay child support.

In July 2018, Manuel broke off the sexual relationship with Carla, and it was at that time, according to Manuel, that Carla stopped allowing him to see Minor Child and, visitation stopped. Carla began dating Edgar Ruiz ("Edgar") around that time and married Edgar on February 8, 2020. In August 2020, Carla received a letter from Manuel's attorney requesting that visitation be allowed, or legal action would follow. The letter requested visitation begin anew according to phase one of the transitional schedule as provided in the divorce decree, provided Manuel's contact information, and named a time and place for the visitation. Carla did not show up for the requested visitation.

On December 9, 2020, Carla and Edgar filed a petition for adoption and alleged Manuel's consent to the adoption was not required because (1) Manuel had abandoned the child in that he failed to provide reasonable support and maintain regular contact; and (2) Manuel failed to provide reasonable support or maintain regular contact with Minor Child without just cause for a period of one year.

In April 2021, Manuel filed a motion for contempt in his divorce case, and a hearing was held on July 28, 2021. At the contempt hearing, the circuit court held Carla in contempt for not keeping Manuel updated on Minor Child's health and welfare and for failing to provide her current phone number and home address. However, the circuit court did not find Carla in contempt regarding visitation because there "was no evidence that [Manuel] ever tried, other than the Phase 1, to follow the order of the court . . . and [Carla's] ability to follow the visitation order was dependent on Manuel."

On August 18, 2021, the circuit court held a hearing on the petition for adoption. At the hearing, Carla testified Manuel saw Minor Child only "three or four times" prior to their divorce and had not seen Minor Child since June 2018. Carla admitted not giving Manuel her new phone number in 2018 or her new home address in 2019. Carla testified that, despite not having Carla's phone number, Manuel frequently contacted her through Facebook Messenger, but she did not always respond to him or answer his phone calls made through the messaging app.

Carla testified Manuel asked to see Minor Child in January 2019, but she refused that request because she did not want Manuel to be a part of Minor Child's life. In addition, she admitted she did not invite Manuel to Minor Child's third birthday party in 2019, refused Manuel's attempts to buy gifts for Minor Child on more than one occasion, and refused Manuel's request to see Minor Child in May 2020. Carla testified she and Edgar began talking about filing a petition for adoption after receiving Manuel's letter requesting visitation in August of 2020.

Manuel testified about tension between him and Carla's father, which included testimony that, prior to Minor Child's birth, Carla's dad and older brother came to his house late at night and confronted him about their separation, which left him feeling uncomfortable and threatened. Manuel testified Carla did not notify him when she went into labor or after Minor Child was born, and he only learned about Minor Child's birth from his mother. He also testified to staying at the hospital for only an hour because he "knew he wasn't welcome there by her dad." Manuel admitted he did not see Minor Child for two or three months after he was born but testified that Carla and Minor Child resided with Carla's parents and that, during that time, he brought supplies to Carla, such as diapers and baby Tylenol. However, when delivering the supplies, he would text Carla to tell her he was outside because he was not welcome to knock on the door.

Manuel testified that in 2016, he moved into his own apartment and began to see Minor Child three times a month. Manuel would pick Minor Child up from his mother's house where Carla dropped Minor Child off. When his work schedule changed, he saw Minor Child once or twice a month on the weekends. Manuel's wife, Denise, testified that she saw Manuel with Minor Child at the apartment or at Manuel's parent's home. Both Manuel and Carla testified that Carla invited Manuel to Minor Child's baptism; however, Carla admitted she never told Manuel the time of the baptism, but he never asked. When asked about the baptism, Manuel testified he did not attend because of "bad blood" between him and Carla's father.

Manuel testified that he has two other children—a daughter, who was born with health issues when he was fifteen years old; and a son, who was born to him and his wife, Denise. Manuel testified he sees his daughter weekly. Maria Osnorio, the mother of Manuel's daughter, testified Manuel is a good coparent who is actively involved in parenting decisions and contributes financially.

Manuel testified that in 2019, he learned his mother had been secretly visiting with Minor Child. Manuel's mother, Margarita Cervantez, testified that Carla informed her if she told Manuel she was seeing Minor Child, she would not allow her to see him anymore and would not send her any more pictures of Minor Child. She also testified Carla instructed her she was not allowed to refer to herself as Minor Child's grandmother and that Minor Child was not allowed to know who she was.

Manuel admitted he "should have done more" but also addressed the lack of communication between him and Carla in 2019. Manuel testified that he had requested visitation with Minor Child through the messaging app, but he "wasn't getting no answers from her. She just wasn't answering anything. . . . I had no other way of getting in contact with her." Manuel testified he waited to legally enforce his right to visitation because Carla was undocumented at the time, and he worried how it would impact her immigration status and, as a result, his son.

On August 24, 2021, the circuit court entered a decree of adoption granting Carla's and Edgar's adoption petition. The circuit court found Carla's actions did not rise to the level of preventing Manuel from performing his duty to communicate, and Manuel's efforts

5

were "bare minimum at best." The circuit court noted the majority of Manuel's efforts occurred after the adoption petition had been filed. In its decree, the circuit court found Manuel's consent to the adoption was not required because for a period of at least one year, he had failed significantly without justifiable cause to communicate with Minor Child. Additionally, the circuit court found it was shown by clear and convincing evidence that it was in Minor Child's best interest that the adoption petition be granted.

This court reviews adoption proceedings de novo. *Courtney v. Ward*, 2012 Ark. App. 148, 391 S.W.3d 686. Adoption statutes are strictly construed, and a person wishing to adopt a child without the consent of the parent must prove consent is unnecessary by clear and convincing evidence. *Id.* A circuit court's finding that consent is unnecessary due to a failure to communicate with the child will not be reversed unless clearly erroneous. *Id.* A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with a definite and firm conviction that a mistake has been made. *Id.* Under Arkansas law, consent to adoption is not required of a parent of a child in the custody of another if the parent for a period of at least one year has failed significantly without justifiable cause to communicate with the child. Ark. Code Ann. § 9-9-207(a)(2) (Repl. 2020). Justifiable cause means the significant failure must be willful in the sense of being voluntary and intentional; it must appear the parent acted arbitrarily and without just cause or adequate excuse. *Courtney*, 2012 Ark. App. 148, at 15, 391 S.W.3d at 695.

On appeal, Manuel argues the circuit court's decision that his consent to Minor Child's adoption was not required is clearly erroneous because he did not voluntarily,

willfully, arbitrarily, and without adequate excuse fail to maintain communication with Minor Child. Rather, he argues, any defects in his communication with Minor Child were due to Carla's thwarting his efforts to maintain communication. We agree.

The circuit court found Manuel's efforts were "bare minimum at best," and the majority of Manuel's efforts occurred after the petition for adoption was filed. The circuit court's finding is not an accurate representation of the record before us. Before the petition for adoption was filed, Manuel messaged Carla twenty-nine times and sent a legal letter requesting visitation with Minor Child. In fact, the only "effort" Manuel made after the petition for adoption was filed was filing a motion for contempt after Carla ignored his visitation request. For purposes of determining whether a parent willfully deserted his child or intended to maintain his parental role, the circuit court may consider as a factor whether the parent sought to enforce his visitation right during the relevant one-year period. *Vier v. Hart*, 62 Ark. App. 89, 94, 968 S.W.2d 657, 660 (1998). This case is before us because Manuel tried to enforce his right to visitation, and Carla responded by filing a petition for adoption. The Arkansas Supreme Court has held that a circuit court should consider a parent's conduct, particularly in the period before the filing of the adoption petition, in determining whether the parent's consent to an adoption should be required. *See Martini v. Price*, 2016 Ark. 472, 507 S.W.3d 486.

Further, there was not a one-year period during which Manuel did not attempt communication with Minor Child. While Carla alleges the one-year period was met because Manuel had not seen Minor Child since June 2018, that is not the standard. The law is clear

7

that the standard is whether Manuel significantly failed without just cause to communicate with Minor Child for a period of at least one year, not physically see him. Ark. Code Ann. § 9-9-207(a)(2).

In determining whether a significant failure has occurred, we must inquire whether the parent utilized those resources at his command in continuing a close relationship with the child. *See Newkirk v. Hankins*, 2016 Ark. App. 186, 486 S.W.3d 827. Under the circumstances presented in this case, Manuel took steps to form a relationship with Minor Child. Manuel's only resource to communicate with Minor Child, only four years old, was through Carla. We previously held a parent's attempt to conceal the child from the other parent by not providing a home address or phone number effectively prevents that parent from communicating with the child in a meaningful way. *French v. Hoelzeman*, 2020 Ark. App. 543, at 8, 614 S.W.3d 850, at 855–56. Carla concealed her home address and phone number from Manuel and was held in contempt for doing so. Clearly, Manuel's inability to contact Minor Child through Carla was not voluntary or intentional, which is required for a just-cause finding. *Courtney*, 2012 Ark. App. 148, at 15, 391 S.W.3d at 695.

While the circuit court suggests Manuel could have done more, the Arkansas Supreme Court held the question is not whether a parent could have done more; rather, it is whether the parent's efforts to establish a significant relationship, despite the other parent thwarting his or her efforts, were sufficient such that consent was not required. *In re Adoption of Baby Boy B.*, 2012 Ark. 92, 394 S.W.3d 837. We hold Manuel's efforts were sufficient under these circumstances, and the circuit court's finding that Manuel's consent to Minor

8

Child's adoption was not required is clearly erroneous. Accordingly, the circuit court's order finding Manuel's consent to the adoption of Minor Child was not required and granting the petition to adopt Minor Child is hereby reversed and dismissed.

Reversed and dismissed.

GLADWIN and GRUBER, JJ., agree.

*Joseph Paul Smith, P.A.*, by: *Joseph Paul Smith*, for appellant.

*Matthews, Campbell, Rhoads, McClure & Thompson, P.A.*, by: *Sarah L. Waddoups*, for appellees.