Cite as 2023 Ark. App. 522

# ARKANSAS COURT OF APPEALS
DIVISION III
No. CV-22-628

| | |
|---|---|
| IN THE MATTER OF THE ADOPTION OF MINOR CHILD<br><br>ADAM MCKIRCH<br>APPELLANT<br><br>V.<br><br>BRIAN MYERS<br>APPELLEE | Opinion Delivered November 15, 2023<br><br>APPEAL FROM THE BENTON COUNTY CIRCUIT COURT<br>[NO. 04PR-21-1067]<br><br>HONORABLE CHRISTINE HORWART, JUDGE<br><br>AFFIRMED |

## RAYMOND R. ABRAMSON, Judge

Adam McKirch appeals a Benton County Circuit Court decree of adoption entered on June 27, 2022. On appeal, McKirch argues that the decree should be reversed and dismissed because his consent was required. He also contends that the circuit court clearly erred in finding that the adoption was in the child's best interest. We affirm.

McKirch married Claudia Myers[1] in December 2012. One minor child (MC) (DOB 12/20/16) was born during their marriage. It was an abusive marriage. Claudia sought an order of protection in which she described the abuse: McKirch choked her, pushed her "down to the ground a lot," and they had heated arguments. Some of this abuse occurred in

---

[1]Claudia married appellee Brian Myers on July 6, 2020.

MC's presence, and some of it occurred while Claudia was pregnant with her. Claudia separated from McKirch in August 2017 and subsequently filed for divorce.

During the pendency of the divorce, Claudia had temporary custody of MC, and McKirch had supervised visitation. Claudia also was required to provide McKirch with periodic updates, which she accomplished by emailing him using an email address she established specifically for that purpose. McKirch harassed her via email. His last supervised visit was in July 2019, just prior to the final hearing in the divorce case, which he failed to attend.

McKirch and Claudia's divorce decree was entered by the Faulkner County Circuit Court on July 29, 2019. The decree vested primary custody of MC with Claudia. The decree specifically provided that McKirch was to have no contact with either Claudia or MC. The decree stated that in order for McKirch to receive future visitation with MC, he would have to demonstrate not only that visitation with him is in MC's best interest but also that he has the ability to comply with court orders, has "learned healthy communication boundaries, and has received intensive psychological treatment." McKirch was ordered to pay child support in the amount of $602 a month. Further, the decree explicitly provided the following language in bold print: "Pursuant to Ark. Code Ann. [§] 9-9-220(c), the non-custodial parent is hereby notified that failure to pay child support or to visit the child for at least one (1) year shall provide the custodial parent with the right to initiate proceedings to terminate the parental rights of the non-custodial parent."

On August 20, 2019, Claudia filed a petition seeking an order of protection. McKirch continued to send harassing and abusive emails. The court entered an ex parte order on April 9, 2020; McKirch did not comply as he continued to send threatening emails. The Faulkner County Circuit Court entered a final order of protection on May 7. This order directed McKirch to enroll in "batterer's treatment with Conway Counseling as soon as he is released from jail" and to complete that treatment within eight months of enrollment.

On October 22, 2021, Claudia's husband, Brian, filed a petition for a stepparent adoption of MC, alleging that McKirch's consent was not required because he had failed substantially without justifiable cause to have any contact with, or provide any support for, MC for a period in excess of one year. At the June 23, 2022 adoption proceeding, McKirch did not testify, and there was no evidence presented to the circuit court as to whether he complied with this requirement or the requirements in the divorce decree. Claudia testified that she was not aware of any efforts made by McKirch to satisfy any of those requirements or the requirements the divorce decree imposed on him were he to seek visitation privileges after the finalization of the divorce.

Claudia described Brian's relationship with MC as that of a loving, involved father, doing things such as going to the park, attending father-daughter functions, and reading her bedtime stories. Brian participates in MC's speech-disability therapy and assists in taking her to and from preschool to the extent his work schedule permits. Claudia described MC's reaction to Brian's engagement with her as that of a father. MC calls him "Daddy" and is

excited to see him when he picks her up in the afternoon. She believed that it was in MC's best interest to be adopted by Brian.

Brian's mother, Karen Myers, testified in support of her son. She testified that Brian and MC have a loving relationship and that they do a lot together, such as hiking and playing games. She testified that Brian has a "good way" with MC, that MC loves him, and that the adoption would be in MC's best interest.

Brian testified that he has lived in Bella Vista for six years and that he works as a field supervisor for AAA Insurance, earning approximately $80,000 annually. His relationship with MC is great, and he testified that he never knew that he could love someone as much as he loves her. He, Claudia, and MC spend a lot of time together doing family activities. Brian participates in, and was knowledgeable about, MC's individual education plan and stated that MC has made vast improvement in her speech disability. Brian treats MC as his own child; contends that he has the capacity to give her love, affection, and guidance; and desires to establish a parent-child relationship with her. He further stated his belief that the adoption is in MC's best interest.

At the adoption hearing, McKirch contended that the no-contact provisions in the divorce decree and order of protection excuse his failure to communicate with MC since July 2019. The evidence at the hearing showed that on March 29, 2021, the Faulkner County Circuit Court entered an order on McKirch's plea of nolo contendere to a charge of first-degree terroristic threatening, a Class D felony; he was sentenced to sixty months' probation. The underlying offense occurred on April 27, 2020. Claudia testified that this charge arose

because McKirch continued to contact her after the entry of the order of protection. Furthermore, at the time of the hearing, McKirch was in custody at the Faulkner County jail after his arrest on May 19, 2022.

Having considered the testimony, the circuit court found that McKirch's consent to the adoption was not required because he had failed significantly without justifiable cause to communicate with MC for a period in excess of one year. Because McKirch's conduct that gave rise to the no-contact prohibitions was unjustifiable, the circuit court ruled that his consent to adoption was not required pursuant to Arkansas Code Annotated section 9-9-207(a)(2) (Repl. 2020). The circuit court further found that the adoption was in MC's best interest. McKirch has timely appealed this ruling.

The standard of review applicable to the issues in this case is well settled: adoption cases are reviewed de novo. *In re Adoption of A.P.*, 2021 Ark. App. 440, at 8, 638 S.W.3d 293, 299. The decision of the circuit court will not be reversed on appeal unless that decision is clearly erroneous. *Id.* A finding is clearly erroneous when, despite evidence to support it, the reviewing court is left with the "firm conviction that a mistake has been made." *Id.*

Ordinarily, the consent of a natural parent is required in an adoption case. Ark. Code Ann. § 9-9-206 (Repl. 2020). However, this consent is not required "if the parent for a period of at least one (1) year has failed significantly without justifiable cause (i) to communicate with the child or (ii) to provide for the care and support of the child as required by law or judicial decree." Ark. Code Ann. § 9-9-207(a)(2). A significant failure is "one that is meaningful or important," and is "unjustifiable if it is voluntary and intentional, i.e.,

5

arbitrary and without adequate excuse." *Gordon v. Draper*, 2013 Ark. App. 352, at 6, 428 S.W.3d 543, 546.

At the time Brian filed his petition for adoption, it had been over two years since McKirch had any contact with MC, and at the time of the hearing, it had been nearly three years. McKirch claims that he could not have communicated with MC without being in violation of two court orders that prohibited such communication. In essence, he claims that his parental duty to communicate with MC should be tolled while he was subject to the no-contact orders. We are not persuaded by this argument. The circuit court was not clearly erroneous when it found that McKirch's consent to adopt was unnecessary.

We agree with Brian's assertion that this argument is analogous to one that might be made by an imprisoned parent who claims that he was not able to have contact with his child due to being incarcerated because, in both circumstances, the restraint is the direct result of intentional misconduct. This court has held that

> [a]lthough imprisonment imposes an unusual impediment to a normal parental relationship, it is not conclusive on the termination issue. . . . Rather, in deciding whether to terminate the parental rights of a party, the trial court has a duty to look at the entire picture of how that parent has discharged his duties as a parent, the substantial risk of serious harm the parent imposes, and whether or not the parent is unfit.

*Henderson v. Callis*, 97 Ark. App. 163 (2006) (internal citation omitted) (citing *In re Adoption of K.M.C.*, 62 Ark. App. 95, 969 S.W.2d 197 (1998)).

We apply the same analysis here. Both the decree of divorce and the order of protection imposed conditions on McKirch that, if satisfied, would have put him in a

6

position to petition the court to remove the prohibitions against him contacting MC and to establish some sort of visitation with her. However, there is no evidence in the record that McKirch took advantage of those opportunities, and there is no evidence in the record to indicate that McKirch participated in any sort of psychological therapy or anger-management program. *See Gordon*, 2013 Ark. App. 352, at 6, 428 S.W.3d at 546 (finding that a failure to take action to obtain a visitation hearing was a relevant factor in the determination of whether failure to communicate was significant and unjustifiable).

In his brief, McKirch relies heavily on *Martini v. Price*, 2016 Ark. 472, 507 S.W.3d 486, for the proposition that his lack of communication with MC is excused by the no-contact provisions of the divorce decree and the order of protection. However, the facts in *Martini* are distinguishable from the facts of this case. In *Martini*, the child to be adopted was approximately six years old at the time the petition for adoption was filed. *Id.* at 3, 507 S.W.3d at 488. Martini was barred by an order of protection from having any contact with the child's mother (but not the child). *Id.* at 2, 507 S.W.3d at 488. After that order expired, Martini made efforts to reestablish visitation. *Id.* at 6, 507 S.W.3d at 490.

The *Martini* court found that while the no-contact order applied only to the child's mother and not the child to be adopted, the child was of such a young age that any communication with the child would necessarily have to go through the child's mother, which Martini could not do without violating a court order. Our supreme court further held that Martini's failure to communicate with the child for a period of a year or more was justifiably excused.

Here, McKirch presented no evidence that he had demonstrated that he could comply with court orders, had learned healthy communication boundaries, and had received intensive psychological treatment, all as required by the divorce decree, or that he had completed batterer's treatment at Conway Counseling, as required by the order of protection. In contrast, the father in *Martini* made every effort to obtain visitation with his child, including exercising visitation to the fullest extent he was allowed, even though he lived out of state and his attendance at the visits required extensive travel on his part. Whereas in the case at bar, McKirch made no effort to establish any connection with MC.

The evidence before the circuit court clearly and convincingly demonstrated that McKirch is a dangerously violent individual whose intentional misconduct has resulted in circumstances that justifiably prohibit him from contacting MC; therefore, we do not sanction the use of that conduct as a shield from the application of Arkansas Code Annotated section 9-9-207(a)(2).

We note that although the circuit court heard evidence regarding McKirch's failure to provide financial support for MC, the decree of adoption does not address this prong of Arkansas Code Annotated section 9-9-207(a)(2). And as the concurrence addresses, the court also heard argument that the prima facie evidence showed that McKirch's withholding of consent to the adoption was unreasonable, but the court did not find in the decree of adoption that his consent was being unreasonably withheld contrary to the best interest of the child.

McKirch's final appellate argument is that the circuit court was clearly erroneous in finding that the adoption was in MC's best interest. The law favors natural parents, all other things being equal. *In re Adoption of T.A.D.*, 2019 Ark. App. 510, at 8, 588 S.W.3d 858, 863. "However, parental rights are not proprietary and are subject to the performance of duties and obligations of a parent to care for and support a child, and the law protects the rights of parents only so long as the parent discharges these duties." *Id.*, 588 S.W.3d at 863.

The evidence before the circuit court was that McKirch had engaged in violent and threatening conduct toward Claudia that, at times, occurred in MC's presence. There was substantial evidence that he had a turbulent relationship with both mother and child. In contrast, life with Brian is one of support and love, one within which MC was happy and thriving. The circuit court's decision that Brian's adoption of MC was in her best interest was the correct decision, and the entirety of the evidence clearly and convincingly supports it. Accordingly, we affirm the circuit court's best-interest finding.

Having reviewed the record before us, we hold that the circuit court correctly found that McKirch's consent was not required as a condition to adoption, and the adoption was in MC's best interest.

Affirmed.

WOOD, J., agrees.

HIXSON, J., concurs.

**KENNETH S. HIXSON, Judge, concurring**. I concur with the result reached by the majority. However, I cannot agree with the majority's holding that Adam McKirch's consent

9

to the adoption was not required because he failed significantly *without justifiable cause* to communicate with MC for a period of one year.  I vote to affirm the adoption based on Brian Myers' allegation made both in his petition and at the hearing that Adam's consent to the adoption was being unreasonably withheld contrary to the best interest of the child.  In my view, that allegation was conclusively proved, and I would affirm the trial court's order because it reached the right decision albeit for the wrong reason.

In Brian's petition, he alleged that the adoption should be granted because (1) Adam failed significantly and without justifiable cause to communicate with MC for more than one year; (2) Adam failed to provide care and support for MC for more than one year; and (3) *even if Adam refuses his consent to the adoption, the court should find that such consent was being unreasonably withheld*.  Adam also argued that the adoption was in MC's best interest.  The trial court granted the petition for adoption based on Brian's first allegation, and the court found, pursuant to Ark. Code Ann. § 9-9-207(a)(2)(i) (Repl. 2020), that Adam's consent to the adoption was not required because he had failed significantly without justifiable cause to communicate with MC for a period of one year.  The trial court also found that the adoption was in MC's best interest.  I agree with the trial court's best-interest finding and would affirm that finding as not clearly erroneous.  However, I cannot agree with the trial court's finding that Adam's failure to communicate with MC was unjustified when there was an order of protection prohibiting such contact under penalty of criminal sanctions.

In *Martini v. Price*, 2016 Ark. 472, 507 S.W.3d 486, the supreme court reversed an adoption and held that, although the father had not had contact with his child for more

10

than one year, his failure to contact the child was not without justifiable cause due to two orders of protection entered against the father prohibiting him from having contact with his ex-wife and the young age of the child, which would have required him to communicate with his ex-wife to contact the child. In the present case, a protective order was in place that prohibited Adam from having any contact with his ex-wife *or his child* for a period of ten years. While I recognize that there are factual differences between *Martini* and the instant case, the bottom line is that, in both cases, the father was under a protective order that, from a practical and legal standpoint, made it impossible to contact his child without violating the order. In my view, it should not be permissible for one court to order a father to not contact his wife or child or face criminal penalties; and then for another court to find that his consent to an adoption was not required because he did not contact the child for one year—during which time the father was at all times under the no-contact order. Trying to unnecessarily distinguish *Martini* and drawing blurred lines among these cases opens a Pandora's box to future litigants seeking to adopt when a natural parent is under such a protective order prohibiting contact with his or her child. The majority has introduced the proverbial slippery slope where none is needed. If there is to be a departure from the *Martini* holding, I would submit that this is for the supreme court and not the court of appeals.

Nonetheless, as previously stated, I would affirm the adoption in this case because Adam's consent to the adoption was being unreasonably withheld contrary to the best interest of the child. Arkansas Code Annotated section 9-9-220(c)(3) (Repl. 2020) provides an alternate avenue for granting an adoption and states:

(c) In addition to any other proceeding provided by law, the relationship of parent and child may be terminated by a court order issued under this subchapter on any ground provided by other law for termination of the relationship, or on the following grounds:

. . . .

(3) That in the case of a parent not having custody of a child, his or her consent is being unreasonably withheld contrary to the best interest of the child.

In *T.R. v. L.H.*, 2015 Ark. App. 483, this court affirmed an adoption after the trial court found that the father had unreasonably withheld his consent. In *T.R.*, 2015 Ark. App. 483, at 6, we wrote:

In making the decision whether to terminate the parental rights of a party, the trial court has the duty to look at the entire picture of how that parent discharged his duties as a parent, the substantial risk of serious harm the parent imposed, and whether or not the parent was unfit. Any evidence having probative value as to the present or prospective fitness of a parent is admissible to determine whether consent has been unreasonably withheld. Past actions over a meaningful period serve as good indicators of what the future may be expected to hold.

In *T.R.*, the proof showed that the father lacked stability and the capacity to care for the child and that, in contrast, the child was thriving in the care of the kind and loving adoptive parents.

Brian raised this issue in his adoption petition and argued it at length at the final hearing. In response to Adam's directed-verdict motion at the close of the evidence, Brian argued that Adam's consent was not required due to a failure of communication and a failure of support for one year, and Brian then argued:

The third prong is the wrongful withholding of consent contrary to the child's best interest. The testimony has been that [Brian] is an outstanding parent, that he participates in MC's activities, that he loves her, that he engages with her in all of the

12

things that the father of a five-year old daughter should be doing. And I think the most telling part of it is those photographs. In every photograph, that kiddo is smiling because she is part of a family that has a loving mother and a loving father. And what else could possibly be in the best interests of a minor child, to have a safe, functional, healthy, happy family, with a mother and father that actively engage, that actively love, that provide care and support, and discharge the duties of a parent. To me, as a child, that's a fundamental right. And the evidence has been that all of these things are provided in [Brian's] care. That's what's in MC's best interest. And I think the prima facie evidence has been that [Adam's] withholding of consent to this adoption is unreasonable.

Although the trial court did not find in the decree of adoption that Adam's consent was being unreasonably withheld contrary to the best interest of the child, it has been stated many times that we may affirm the trial court when it reached the right result, even though it may have announced the wrong reason. *See Hanlin v. State*, 356 Ark. 516, 157 S.W.3d 181 (2004) (explaining that the appellate court may affirm for a different reason when that alternative reason was raised and developed at the trial court level); *Myers v. Ark. Dep't of Hum. Servs.*, 2023 Ark. App. 46, 660 S.W.3d 357 (holding in a termination-of-parental-rights case that this court may affirm the decision of the trial court if the right result was reached, albeit for the wrong reason); *Fenstermacher v. Ark. Dep't of Hum. Servs.*, 2013 Ark. App. 88, 426 S.W.3d 483 (holding that we may affirm the trial court's termination order if other statutory grounds that were alleged in the petition for termination were proved, even when the trial court found a statutory ground that was not).

Here, the evidence showed that, at the time of the final adoption hearing, Adam had not seen MC for almost three years. Moreover, because of Adam's persistent threatening behavior, he was under a protective order prohibiting him from having any contact with MC

13

until May 2030. In contrast, the testimony showed that MC was doing very well in the care of Claudia and Brian. There was testimony that Brian is very involved in MC's life, that they have what can be described as a typical loving father-daughter relationship, that Brian "never knew he could love someone as much as he loves [MC]," and that MC calls Brian "Daddy." I would affirm the adoption because there was conclusive proof presented at the hearing that Adam's consent was being unreasonably withheld contrary to MC's best interest.

For these reasons, I concur with the majority's decision to affirm the decree of adoption.

*Robert S. Tschiemer*, for appellant.

*Burke Law Firm, P.A.*, by: *Brian T. Burke*, for appellee.