Cite as 2025 Ark. App. 116

# ARKANSAS COURT OF APPEALS
DIVISION IV
No. CV-24-15

| | |
|---|---|
| IN THE MATTER OF THE ADOPTION OF MINOR CHILDREN | Opinion Delivered February 26, 2025 |
| JESUS FELICIANA ANDRADE<br>APPELLANT | APPEAL FROM THE WASHINGTON COUNTY CIRCUIT COURT<br>[NO. 72PR-23-290] |
| V. | HONORABLE BETH STOREY BRYAN, JUDGE |
| CARA JEAN DEROUEN AND COURTNEY LYNN DEROUEN<br>APPELLEES | AFFIRMED |

**ROBERT J. GLADWIN, Judge**

Jesus Andrade appeals the September 19, 2023 order[1] of the Washington County Circuit Court finding his consent to the stepparent adoption of his four minor children, MC1, MC2, MC3, and MC4 (collectively "minor children")[2] by Cara Jean Derouen and Courtney Lynn Derouen unnecessary pursuant to Arkansas Code Annotated section 9-9-

---

[1]Incorporated within the order is an order entered the previous day finding that Andrade's consent to the adoption was not required under Arkansas Code Annotated section 9-9-207(a)(1) or (a)(2). *See* Ark. R. App. P. Civ. 2 (b) (2024) (stating that an appeal from any final order also brings up for review any intermediate order involving the merits and necessarily affecting the judgment).

[2]MC2, MC3, and MC4 are Andrade's biological children, and he previously had adopted MC1.

207(a)(1) and (2) (Repl. 2020). He argues that granting the stepparent adoption without his consent was clearly erroneous. We affirm.

## I. *Facts and Procedural History*

Andrade and Cara were married on January 25, 2015, in Albuquerque, New Mexico. They separated in the summer of 2019 because Andrade had been physically violent. Cara never filed any police or DHS reports alleging that Andrade had been physically violent toward the minor children during their marriage because she was afraid of him. She claimed that he did not start getting physically violent with the minor children until 2019 when "everything was unraveling" but claimed that he had always been verbally and emotionally abusive toward them. Cara did file police reports for vandalism that Andrade committed against her property and against her employer's property.

Cara began a relationship with Courtney in January 2020. On March 1 of that year, Andrade was charged with attempted murder for attacking Courtney. Immediately following the attack, Cara and Courtney obtained a temporary restraining order against Andrade. Andrade eventually pled guilty to the lesser charge of aggravated burglary and has been incarcerated in New Mexico since that time.

Cara and Courtney obtained a final order of protection against Andrade on June 24, 2020, which noted that the order was entered on the stipulation of the parties and that both parties appeared in person and were represented by counsel. The final order of protection prohibited Andrade from contacting Cara and Courtney for three years—from June 24, 2020, to June 24, 2023.

Attached to the final order of protection was a temporary "Custody, Support, and Division of Property Order" that gave Cara temporary legal custody of the minor children and stated that Andrade shall have no contact until further ordered. The temporary order expired on December 24, 2020. Specifically relevant to this matter, the temporary order states on page 3 under the heading "EXPIRATION" that the "provisions set forth regarding custody, support, and division of property shall expire on the 24th day of DECEMBER 2020 at 5:00 p.m."

At some point between June and December 24, while the prohibition on contact with the minor children was still in place, Andrade letters addressed to the children; however, Cara stated the contents of those letters were not "geared towards" them. Andrade was charged with disorderly conduct for sending the letters during the prohibited period.

A final order dissolving the marriage was filed on December 28, also in New Mexico. The order granted primary physical custody and sole legal custody of the minor children to Cara and included a finding that the "father's current incarceration renders him not able to participate in a meaningful way in co-parenting the children." The order further stated that the "father should only be permitted to have contact with the children pursuant to terms and conditions imposed by mother to ensure their physical safety and emotional wellbeing."

The order further provided, "Father's guideline obligation for on-going child support is $417.23," but in the next paragraph it detailed that "Mother further testified that each of the Children receives $220.00 per month as derivative benefits due to Father's disability. Accordingly, the Children receive a total of $880.00 per month, which exceeds Father's

guideline support obligation. Therefore, Father should not be required to pay any additional amounts to Mother for child support." The order goes on to state, "The parties should divide the cost of uncovered medical expenses for the Children in proportion to their incomes as shown on the child support worksheet."

On May 28, 2022, Courtney and Cara married, and on March 29, 2023, Courtney and Cara filed a petition for adoption of the minor children. At the conclusion of the adoption hearing held on September 13, the circuit court awarded Cara sole custody of the minor children. The circuit court's oral ruling concluded:

> So, the Court finds, again, based on the uncontroverted evidence that it's in the best interest of the minor children that the Petition for Adoption be granted, and further finds that Mr. Andrade's consent is not required as he has abandoned the children because of his failure to pay any support since at least 2020 and his failure to have any communication with the children since at least December of 2020.

In responding to a question from counsel, the circuit court clarified that it was finding both abandonment under Arkansas Code Annotated section 9-9-907(a)(1) and, alternatively, failure to communicate or support for one year under Arkansas Code Annotated section 9-9-207(a)(2) as grounds for not requiring Andrade's consent to the adoption:

> The Court would further make an alternative finding that pursuant to 9-9-207, Subsection (a)(2), that the parent for at least one year has failed significantly without justifiable cause to communicate with the child, or to provide for the care and support of the child as required by law or judicial decree. That was not pled in the petition, but certainly that was the testimony, and the Court would amend the pleadings to reflect that testimony that was put in. So, again, as an alternative finding, the Court finds that under 9-9-207(a)(1)(2), his consent is further not required.

4

A written order was entered on September 18 that stated: "Respondent's consent to the adoption herein is not required under A.C.A. § 9-9-207(a)(1). Further, Respondent's consent to the adoption herein is not required under A.C.A. § 9-9-207(a)(2)."

The adoption decree dated September 19 included the following finding:

9. The biological father of the children herein, Jesus Andrade, has been found to have abandoned the minor children, has been found to have failed significantly, without justifiable cause, to communicate with the minor children for one (1) year or more, and has been found to have failed significantly, without justifiable cause, to provide support for the care and support of the minor children. Therefore, pursuant to Ark. Code Ann. § 9-9-207(a)(1) and 9-9-207(A)(2), his further consent is not required, and his legal rights are now terminated.

A notice of appeal of the September 18 order was timely filed on October 18, and this appeal followed.

II. *Standard of Review and Applicable Law*

This court reviews adoption proceedings de novo. *In re Adoption of KAB*, 2021 Ark. App. 24, 616 S.W.3d 260. We give due regard to the opportunity and superior position of the circuit court to determine the credibility of witnesses, and we have stated that the personal observations of the circuit court are entitled to even more weight in cases involving the welfare of a child. *Id*. A circuit court's finding regarding whether consent is unnecessary will not be reversed unless clearly erroneous. *See id*. A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with a definite and firm conviction that a mistake has been made. *Id*.

Adoption statutes are strictly construed, and a person wishing to adopt a child without the consent of the parent must prove by clear and convincing evidence that consent

5

is unnecessary. *In re Adoption of Minor Child*, 2022 Ark. App. 408, at 6, 653 S.W.3d 544, 548. Under Arkansas law, consent to adoption is not required of a parent who has abandoned a child; consent to adoption is also not required of a parent of a child in the custody of another if the parent for a period of at least one year has failed significantly without justifiable cause to communicate with the child or to provide for the care and support of the child as required by law or judicial decree. Ark. Code Ann. § 9-9-207(a)(1), (2).

III. *Discussion*

Andrade argues that the circuit court erred by finding his consent was not required because he abandoned the minor children or failed to communicate or support the minor children for a period of a year "without justifiable cause." Andrade contends that there was just cause for his estrangement, including the fact of his incarceration in New Mexico, a no-contact order, and the terms of the order of divorce that prohibited any contact with the minor children. Accordingly, Andrade urges the adoptions should not have been allowed to proceed without his consent.

The circuit court made two alternative findings to support its decision that Andrade's consent to the adoption was not required pursuant to subdivisions 9-9-207(a)(1) and (2): failure to communicate with the disjunctive conjunction "or" failure to support.

A. Failure to Communicate

The circuit court found that Andrade's consent was not necessary, in part, because of his failure to "have any communication" with the minor children since at least December 2020. Andrade argues that he had "justifiable cause" for any failure to communicate with

6

the minor children because of his incarceration, the order of protection, and the terms of the order of divorce. His claims any lack of communication was involuntary and beyond his control. We disagree.

> Under the statute, consent to adoption is not required of
>
> a parent of a child in the custody of another, if the parent for a period of at least one (1) year has failed significantly *without justifiable cause* (i) to communicate with the child or (ii) to provide for the care and support of the child as required by law or judicial decree.

Ark. Code Ann. § 9-9-207(a)(2) (emphasis added). Justifiable cause means the significant failure must be willful in the sense of being voluntary and intentional; it must appear the parent acted arbitrarily and without just cause or adequate excuse. *In re Adoption of Minor Child*, 2022 Ark. App. 408, at 6, 653 S.W.3d at 548. The issue of whether there was justifiable cause is factual and turns largely on the credibility of the witnesses. *Martini v. Price*, 2016 Ark. 472, at 5, 507 S.W.3d 486, 489. It is not required that a parent fail totally in his or her obligations to fail "significantly" within the meaning of the statute. *Id.* Moreover, the one-year period may be any one-year period, not necessarily the one immediately preceding the filing of the adoption petition. *Id.*

The record indicates that between December 24, 2020, and December 2022, Andrade made no attempts to contact the minor children. Andrade made no attempt to reach out to Cara through friends, family, or an attorney. Cara's and MC1's cell phone numbers have not changed since 2015. Andrade testified that at some point, he lost access to a cell phone while in prison. When he did have access to a cell phone, he deleted MC1's number from

7

it. Once in December 2022 or February 2023, Andrade's friend, Kent, texted MC1 on Andrade's behalf. Andrade gave Kent permission to contact the family. Andrade sent letters addressed to the minor children after the petition for adoption was filed, although the contents of the letters were not aimed at them. Cara testified that she has not imposed any terms or conditions regarding contact with the minor children. She testified that she was never contacted by an attorney on behalf of Andrade requesting terms or conditions for communication. Moreover, Andrade made no attempt to modify the custody terms of the order of divorce.

With respect to his incarceration, the record supports the circuit court's finding that his lack of access to a cell phone and his voluntary deletion of MC1's phone number did not prohibit him from attempting to communicate with the minor children via any other means available to him. The circuit court made specific note of this fact in its oral findings:

> Further, there's been no communication whatsoever with the children since at least December of 2020. It's his testimony that he doesn't - - he no longer has the cell phone in his possession that have the child's number on it, but, again, there's been no evidence of any efforts made by Mr. Andrade to have any communication with the children.

*See, e.g.*, *Gordon v. Draper*, 2013 Ark. App. 352, at 6, 428 S.W.3d 543, 546 (citing *Zgleszewski v. Zgleszewski*, 260 Ark. 629, 632, 542 S.W.2d 765, 767–68 (1976)) (holding imprisonment is no justification for failure to communicate with child). Moreover, in a recent case that had a similar fact pattern, the court made clear that a father's intentional misconduct that served as the basis for his incarceration or the necessity of an order of protection did not grant just cause since the restraint is the direct result of his intentional misconduct. *In re Adoption of*

*Minor Child*, 2023 Ark. App. 522, at 6, 678 S.W.3d 899, 903. Therefore, Andrade's argument that he did not have a cell phone is meritless.

And the record is void of evidence that Andrade ever asked Cara to bring the minor children to visit or that she refused any such hypothetical request. To the extent that Andrade is making such a claim, it was never made before the circuit court and therefore should not be considered or addressed by this court. *See Brown v. Shipley*, 2022 Ark. App. 246, at 10, 646 S.W.3d 635, 641.

This court has held that there is a clear distinction between "communication and visitation," stating that the terms are not synonymous and interchangeable. *In re Adoption of Minor Child*, 2024 Ark. App. 202, at 5, 686 S.W.3d 858, 862. The allowance or disallowance of one does not equate to an allowance or disallowance of the other. *Id.* (refusing father's rationale that the parties' divorce decree's visitation provision served to excuse him from his parental obligation to communicate with his child). The fact that Andrade could not have visitation with the minor children in no way negates his responsibility or ability to have continued communication with them. And this court held in *Rodgers v. Rodgers*, where a parent had her visitation with her minor child suspended by order of court, that "the statute reads it's a parent's failure to 'communicate with the child,' not a failure to have visitation with the child that allows adoption to proceed without consent. Ark. Code Ann. § 9-9-207(a)(2)." 2017 Ark. 182, at 5, 519 S.W.3d 324, 328. The court went on to note that the parent could have communicated with the children in other ways: "she could have made telephone calls to the children, sent birthday or Christmas cards, letters, or emails, but she

9

attempted to do none of these." *Id.* Similarly, in this case, Andrade failed to make any attempts at communicating with the minor children through any means.

Andrade's argument regarding the order of protection is likewise misplaced. Although the record reflects there was a final order of protection entered on June 24, 2020 (to last until June 24, 2023), it applied to Cara and Courtney and prohibited him from contacting them. Although the temporary custody, support, and division-of-property order that was also entered on June 24, 2020, prohibited Andrade from having contact with the minor children "until further ordered," that order expressly expired on December 24, 2020. Thus, any legal impediment that prevented Andrade from having contact with the minor children expired on December 24, 2020.

Finally, we hold that nothing in the order of divorce prohibited Andrade from communicating with his minor children. The order of divorce did set a boundary in that he was permitted to have contact only "pursuant to terms and conditions imposed by the Mother to ensure the physical safety and their emotional well-being." We find no merit in Andrade's argument that because "Cara didn't impose any terms and conditions," he had "just cause" to fail to communicate with the minor children. There is no evidence that Andrade attempted to have an attorney or any other intermediary contact Cara to work out an arrangement for communicating with the minor children while he was incarcerated.

Andrade specifically testified that he did not make any attempts to modify or assert any rights under the custody agreement. For purposes of determining whether a parent willfully deserted his child or intended to maintain his parental role, the circuit court may

consider as a factor whether the parent sought to enforce his visitation right during the relevant one-year period. *See Vier v. Hart*, 62 Ark. App. 89, 94, 968 S.W.2d 657, 660 (1998). Though Andrade's incarceration may have limited visitation, he was afforded an opportunity to communicate with the minor children under the terms of the order of divorce, and he did nothing to exercise those rights.

For all these reasons, we hold that the circuit court did not err in finding that because Andrade failed to communicate with the minor children, his consent was not required. *See, e.g.*, *Newkirk v. Hankins*, 2016 Ark. App. 186, 486 S.W.3d 827 (holding that the circuit court did not err in finding that consent was unnecessary due to the appellant's failure to support or communicate with the child).

### B. Failure to Support

Andrade also submits that the circuit court's finding of a failure to support for more than one year is legally excused by "justifiable cause" as embedded in section 9-9-207 (a)(2).

The record indicates that Cara has received no support for the minor children since the divorce in December 2020. The circuit court found that the order of divorce assigned a child-support obligation to Andrade in the amount of $417.23 but then found that because the minor children were receiving more in Veterans Administration ("VA") benefits in the amount of $220 each, Andrade would not be responsible for any additional child support. The minor children's VA benefits were deposited into Andrade's bank account.

Andrade testified that Cara complained to his mother or sister about money because they took control of his bank account. Andrade later testified that he did not know Cara

had monetary hardships. Cara attempted to contact the VA to have the minor children's benefits sent to her but was told Andrade would have to make the change. Andrade testified that he thought he was not ordered to pay any support because of the VA benefits the minor children were receiving. Cara testified that she has not received any of the minor children's VA benefits since December 2020. Andrade testified that he is receiving VA benefits but that his benefits were cut to $167 a month because of his incarceration.

The order of divorce stated that Andrade is responsible for a portion of the minor children's medical expenses. Andrade testified that Cara never sent him any request for payment of uncovered medical expenses and never requested that he pay for any medical expenses. Andrade confirmed that he received $5,000 from the sale of the marital home and noted that he works every day and makes sixty cents an hour. Andrade testified that if Cara were to provide him with medical-expense requests, he could get those paid even though he is incarcerated.

The circuit court found that since at least December 2020, Andrade had failed to provide any financial support to his minor children. The circuit court specifically found the following regarding Andrade's support obligation under the terms of the parties' order of divorce:

> It's counsel for Mr. Andrade's position that there was no child support ordered, but that is not what the Court finds was the Order of the New Mexico court. The order of the New Mexico court was that his child support obligation would be $417.23 a month and that because the children were receiving the VA benefits of $880, that there would be no additional amounts owed. But that certainly required those— that $880 to be paid to the children.

The order of divorce states:

> 20. Mother testified that Father receives VA disability benefits in the amount of $1,861 per month.

> 21. Using the financial information set forth above, the Court prepared a *Worksheet A-Basic Visitation* that shows Father's guideline obligation for on-going child support is $417.23.

> 22. Mother further testified that each of the Children receive $220.00 per month as derivative benefits due to Father's disability. Accordingly, the Children receive a total of $880.00 per month, which exceeds Father's guideline child support obligation. Therefore, Father should not be required to pay additional amounts to Mother for child support.

Andrade maintains that his duty of support was controlled by the New Mexico order of divorce that waived chart-based support in favor of the VA benefits the minor children had been receiving. Andrade notes that he was never accused of being in arrears because there was no child-support amount stated in decree.

Additionally, the order of divorce addressed uncovered medical expenses for the minor children:

> 23. The parties should divide the cost of uncovered medical expenses for the Children in proportion to their incomes as shown on the child support worksheet.

Cara testified that there were uncovered medical expenses for the minor children. But she also acknowledged that she had never provided those expenses to Andrade or requested any reimbursement or payment. Andrade confirmed Cara had never contacted him about paying for any medical expenses for the minor children.

Accordingly, Andrade maintains that any finding of nonsupport of the minor children is justified by the lack of any child support set out in the order of divorce and by Cara's failure to request any payment or reimbursement of uncovered medical expenses.

We disagree and note language from the circuit court that Andrade ignored and conveniently omitted from his brief:

> It's counsel for Mr. Andrade's position that there was no child support ordered, but that is not what the Court finds was the order of the New Mexico court. The order of the New Mexico court was that his child support obligation would be 417.23 a month and that because the children were receiving the VA benefits of 880, that there would be no additional amounts owed. But that certainly required those -- that 880 to be paid to the children. Again, there has not been a single dollar paid to the children since at least December of 2020 by Mr. Andrade.

The record is clear—and the circuit court agreed—that Cara had not received any of the minor children's VA benefits, nor had she received any other support from Andrade for the minor children since December of 2020.

Andrade does admit that the order of divorce imposed a duty on him to assist with the children's uncovered medical expenses. But regarding his claim that he had "justifiable cause" not to abide by these terms of the order of divorce because Cara did not provide proof of any of the expenses or request reimbursement, he once again blames Cara for his failure to provide any support for his minor children and instead imposes a duty onto Cara that is not supported by the terms of the parties' order of divorce or elsewhere.

Andrade knew he had a duty to assist with uncovered medical expenses; yet, he failed to provide any support. Andrade's own testimony that Cara had spoken with his mother or sister and was "angry about money" evidenced his knowledge that Cara needed assistance.

14

Andrade's duty to support his minor children is a personal one, and he cannot be excused from this duty solely due to Cara's action or inaction.

Arkansas appellate courts have heard arguments similar to Andrade's and have not been persuaded. In *In re Adoption of A.M.C.*, 368 Ark. 369, 378, 246 S.W.3d 426, 432 (2007), our supreme court held that imprisonment does not toll a parent's responsibilities toward his child. In *Gordon*, 2013 Ark. App. 352, at 6, 428 S.W.3d at 546, the circuit court found that the appellant's consent to adoption was unnecessary because of his failure to pay support for eighteen months despite being imprisoned for ten of those months. This court affirmed, holding the failure to pay support was unjustifiable. *Id.*

Another person's conduct does not excuse a father's duty to support his minor child unless that conduct prevents him from performing his duty. *Pender v. McKee*, 266 Ark. 18, 31, 582 S.W.2d 929, 935 (1979). The parent must furnish the support and maintenance himself, and the duty is a personal one; he may not rely on someone else to support his children to avoid the statute's provision permitting the adoption of his children without his consent because he failed to support the children. *Id.*

Further, it is well settled that a parent has a legal obligation, independent of statute, to support his minor child. This moral and legal duty remains regardless of the existence of a support order. *In re Adoption of A.M.P.*, 2021 Ark. 125, at 8, 623 S.W.3d 571, 576. In *Newkirk*, *supra*, this court specifically held that incarceration did not excuse financially supporting a child and that where an incarcerated father had money in his inmate bank account, he had a duty to use a portion to support his children.

15

It is undisputed that Andrade has not paid a single dollar to the minor children since at least December 2020 despite his ability to do so. Considering the foregoing, we hold that the circuit court's finding that Andrade's consent was unnecessary due to his failure to support the minor children was not clearly erroneous.

Accordingly, we hold that the overwhelming and largely undisputed evidence supports the circuit court's finding that Andrade's consent to the adoptions was not required. Accordingly, we affirm.

Affirmed.

VIRDEN and MURPHY, JJ., agree.

*Tim Cullen*, for appellant.

*Heimer Law, PLLC*, by: *Justin Heimer*, for appellees.