Cite as 2026 Ark. App. 275

# ARKANSAS COURT OF APPEALS
## DIVISION II
#### No. CV-25-278

| | |
|---|---|
| IN THE MATTER OF THE ADOPTION OF MINOR CHILD<br><br>JACOB LITTLE<br><br>APPELLANT<br><br>V.<br><br>JACKSON GRANT ROBERTS<br>APPELLEE | Opinion Delivered: May 6, 2026<br><br>APPEAL FROM THE BOONE COUNTY CIRCUIT COURT<br>[NO. 05PR-22-5]<br><br>HONORABLE JOHNNIE A. COPELAND, JUDGE<br><br>AFFIRMED |

**RAYMOND R. ABRAMSON, Judge**

Jacob Little ("Jacob") appeals from the final decree of adoption granted in the Boone County Circuit Court on October 22, 2024, in favor of appellee Jackson Grant Roberts ("Jackson"). On appeal, Jacob argues that the circuit court erred in finding that (1) his consent to the adoption was unnecessary; and (2) that the adoption was in the best interest of the minor child (MC). We affirm.

## I. *Background*

MC was born in October 2014 to Kaitlyn Roberts ("Kaitlyn") and Jacob. Kaitlyn and Jacob were later married in July 2015. After losing his job in the fall of 2017, Jacob confessed to Kaitlyn that he had been using methamphetamine for several years and had stolen multiple tools and other equipment that Kaitlyn found around the property. Following this

confession, Jacob's erratic behavior escalated: he shot guns outside of Kaitlyn's and MC's bedroom windows and sent Kaitlyn a picture of his gun with the text "my friends said to tell you hi" with a middle-finger emoji.

Due to Jacob's escalating behavior, Kaitlyn petitioned the circuit court for a divorce and, separately, for an order of protection. In her petition for an order of protection, Kaitlyn cited Jacob's "meth usage, suicide threats, carrying multiple weapons, job loss, non-support, stealing, erratic behavior, paranoia, use of tracking devices and cameras, and daily verbal abuse and anger" as the reason for the order. Kaitlyn was initially granted a temporary order of protection that allowed Jacob supervised visitation with MC.

From October 26, 2017, to September 25, 2020, Jacob was frequently incarcerated. His incarceration was mainly due to two separate cases that resulted in his pleading guilty to forty-eight mostly drug-related felonies. He had one significant period of release from October 10, 2018, until July 20, 2019. Jacob does not contend that he sought visitation with MC during his period of release. All parties agree that Jacob last saw MC in October 2017 at her third birthday party. Jacob has not provided financial support, nor has he communicated with MC since then.

On December 18, 2017, the divorce decree was granted and included the following language:

> That [Kaitlyn] shall have primary physical custody of the minor child. Because of [Jacob]'s incarceration, there shall be no visitation and no child support. Either party may petition the Court for visitation or support once [Jacob] is no longer in custody.

The court entered a final order of protection on February 6, 2018, with an expiration date of January 16, 2023. The final order of protection included the following language: "[Kaitlyn] is awarded custody of [MC] pursuant to the Decree of Divorce filed December 18, 2018. [Jacob] shall have no visitation with [MC]."

In December 2018, Kaitlyn began dating Jackson Roberts, and they were married in June 2021. Jackson testified that during this period, he saw MC as his child, he had financially and emotionally provided for MC, and they had a close bond. On February 24, 2021, Jacob filed a petition for visitation with MC. On January 13, 2022, Jackson filed a petition in a separate action asking to adopt MC. Jackson alleged that Jacob's consent was unnecessary. The circuit court consolidated the two cases and held a hearing on both issues, considering the testimony of the witnesses—Acacia Johnson, licensed professional counselor; Billy Brady, owner of New Life Center, a reentry program; Kaitlyn; Eirc Stewart, Jackson's employer; Lindsey Weddle, Kaitlyn's coworker; Natalie Roberts, Jackson's mother; Jackson; Jacob; Tess Little, Jacob's wife; and Penny Little, Jacob's mother.

Following the hearing, on the basis of the testimony of the parties and witnesses and evidence entered into the record and noting the best interest of MC, the circuit court granted the petition. In so doing, the court found that Jacob's consent to the adoption was not required because for a period of at least one year, he had failed significantly without justifiable cause to communicate with MC pursuant to Arkansas Code Annotated section 9-9-207(a)(2)(i) (Repl. 2020). This appeal followed.

II. *Standard of Review*

The standard of review applicable to the issues in this case is well settled: adoption cases are reviewed de novo. *In re Adoption of A.P.*, 2021 Ark. App. 440, at 8, 638 S.W.3d 293, 299. The decision of the circuit court will not be reversed on appeal unless that decision is clearly erroneous. *Id.* A finding is clearly erroneous when, despite evidence to support it, the reviewing court is left with the "firm conviction that a mistake has been made." *Id.* at 9, 638 S.W.3d at 299. In resolving the clearly erroneous question, the reviewing court defers to the circuit court because of its superior opportunity to observe the parties and to judge the credibility of witnesses. *Brumley v. Ark. Dep't of Hum. Servs.*, 2015 Ark. 356.

## III. *Discussion*

We first look at whether Jacob's consent is required because that is the dispositive issue. Ordinarily, the consent of a natural parent is required in an adoption case. Ark. Code Ann. § 9-9-206 (Repl. 2020). However, this consent is not required "if the parent for a period of at least one (1) year has failed significantly without justifiable cause (i) to communicate with the child or (ii) to provide for the care and support of the child as required by law or judicial decree." Ark. Code Ann. § 9-9-207(a)(2) (Repl. 2020). A significant failure is "one that is meaningful or important" and is "unjustifiable if it is voluntary and intentional, i.e., arbitrary and without adequate excuse." *Gordon v. Draper*, 2013 Ark. App. 352, at 6, 428 S.W.3d 543, 546. A person who wishes to adopt a child must prove by clear and convincing evidence that consent is unnecessary. *In re Adoption of J.N.*, 2018 Ark. App. 467, at 7, 560 S.W.3d 806, 812. Clear and convincing evidence is defined as that degree of proof that will

4

produce in the fact-finder a firm conviction as to the allegation sought to be established. *Posey v. Ark. Dep't of Health & Hum. Servs.*, 370 Ark. 500, 262 S.W.3d 159 (2007).

We view the issue of justifiable cause as factual but one that is determined largely on the basis of the credibility of the witnesses, and we give great weight to a circuit court's personal observations when the welfare of young children is involved. *Rodgers v. Rodgers*, 2017 Ark. 182, at 4, 519 S.W.3d 324, 327 (citing *In re Adoption of K.F.H.*, 311 Ark. 416, 844 S.W.2d 343 (1993)). "Without justifiable cause" means that the significant failure must be willful in the sense of being voluntary and intentional; it must appear that the parent acted arbitrarily and without just cause or adequate excuse. *In re Adoption of J.N.*, 2018 Ark. App. 467, at 8, 560 S.W.3d at 812.

Jacob argues that his lack of communication with MC was justifiable due to his incarceration, the divorce decree, and the order of protection. This court has recently held that such impediments are not sufficient to justify lack of communication with a minor child. *In re Adoption of Minor Child*, 2025 Ark. App. 116, at 6–7, 708 S.W.3d 784, 789 ("[Father] argues that he had 'justifiable cause' for any failure to communicate with the minor children because of his incarceration, the order of protection, and the terms of the order of divorce. [He] claims any lack of communication was involuntary and beyond his control. We disagree."). Furthermore, this court has held that when an order of protection or a period of incarceration stems from an individual's intentional misconduct, the individual cannot later use the order of protection or incarceration as justification for failure to communicate. *See, e.g., Gordon v. Draper*, 2013 Ark. App. 352, at 6, 428 S.W.3d 543, 546 (citing *Zgleszewski v.*

*Zgleszewski*, 260 Ark. 629, 632, 542 S.W.2d 765, 767–68 (1976)) (holding that imprisonment is no justification for failure to communicate with child); *In re Adoption of Minor Child*, 2023 Ark. App. 522, at 6, 678 S.W.3d 899, 903 (holding that intentional conduct that results in circumstances justifiably prohibiting party from contacting the minor child cannot be used to justify a lack of communication).

The record indicates that between October 26, 2017, and January 13, 2022, Jacob made no attempt to contact MC. He made no attempt to reach out through friends, family, or an attorney. Jacob, on appeal, argues that any such contact was prohibited by the order of protection. However, in his deposition, Jacob readily admitted that he contacted other parties despite standing no-contact orders. Furthermore, the order of protection did not bar Jacob from seeking communication through an attorney acting as intermediary. Moreover, Jacob made no attempt to modify the custody terms of the order of divorce, despite it explicitly stating that Jacob could petition the court for visitation upon his release from incarceration. Accordingly, the circuit court did not err when it held that Jacob's consent was not necessary.

Since we affirm the circuit court's holding that Jacob's consent was not necessary for Jackson to adopt MC, Jacob does not have standing to contest the adoption. *See In re Adoption of Minor Children*, 2026 Ark. App. 123, at 19, ___ S.W.3d ___, ___ (appellant has no standing to contest adoption when his consent was not required).

Affirmed.

VIRDEN and HARRISON, JJ., agree.

6

*Tschiemer Legal Briefing*, by: *Robert S. Tschiemer*, for appellant.

*Jeremy B. Lowrey*, for appelllee.