Cite as 2026 Ark. App. 123

# ARKANSAS COURT OF APPEALS

DIVISION II
**No.** CV-25-320

| | |
|---|---|
| | **Opinion Delivered** February 25, 2026 |
| IN THE MATTER OF THE ADOPTION OF MINOR CHILDREN | APPEAL FROM THE PIKE COUNTY CIRCUIT COURT [NO. 55PR-22-64] |
| DUSTIN HILL APPELLANT | |
| V. | |
| KIMBERLY AND DANIEL CORTEZ AND ARKANSAS DEPARTMENT OF HUMAN SERVICES | HONORABLE TOM COOPER, JUDGE |
| APPELLEES | AFFIRMED |

**BRANDON J. HARRISON, Judge**

Dustin Hill appeals the circuit court's order that granted summary judgment in favor of Kimberly and Daniel Cortez and denied Hill's motion to vacate the order terminating his parental rights, to set aside the adoption of his two children, and to reinstate his parental rights. We affirm the circuit court's order.

This case involves one father, two children, and three separate circuit court proceedings. MC1 was born on 26 April 2017, and MC2 was born on 15 August 2018. In February 2019, Hill petitioned for custody of MC1 and MC2 (the domestic-relations proceeding), and on 15 March 2019, the Pike County Circuit Court adjudicated him the father of the two children. However, Hill's petition was ultimately dismissed in December 2019 after he failed to appear for the final hearing.

On 12 February 2021, the Arkansas Department of Human Services (DHS) petitioned for emergency custody of MC1 and MC2 (the dependency-neglect proceeding). Hill was named as the putative father whose whereabouts were unknown. On February 24, DHS advised the court that it had contacted the Office of Child Support Enforcement (OCSE) in an effort to obtain Hill's contact information but was unsuccessful in obtaining any further information as to Hill's whereabouts. DHS asked the court to issue a warning order notifying Hill of the adjudication hearing set for April 19. The circuit court issued an order for service by warning order, and the warning order was published on February 28 and March 7.

On 25 March 2021, Hill petitioned to reopen the domestic-relations proceeding and again requested custody.

On 30 April 2021, the circuit court adjudicated the children dependent-neglected due to abuse, neglect, and parental unfitness. In the adjudication order, the court found that Hill had been served via publication on 28 February and 7 March 2021, that he had not presented evidence proving that he had established significant contacts with the children, and that his rights as a putative parent had not attached. After a review hearing on July 12, the court changed the goal of the case to termination of parental rights and adoption.

At a hearing in the domestic-relations proceeding on 26 July 2021, Hill appeared with his attorney and learned that DHS currently had custody of the children and that there was an open dependency-neglect case that took priority over the domestic-relations case. The circuit court advised Hill to enter his appearance in the dependency-neglect case and request custody. The court also informed Hill that the goal in the dependency-neglect case

2

had been changed to termination of parental rights, that a review hearing was set for 18 October 2021, and that Hill "certainly need[ed] to be there if [he had] any interest." In response, Hill stated, "Yes, sir."[1]

At the 18 October 2021 hearing, the children's mother agreed to relinquish her parental rights. Neither Hill nor his attorney appeared at the hearing. On 18 November 2021, the circuit court entered an order terminating the parental rights of both the mother and Hill. The order noted the court's earlier finding that Hill had been served via publication on 28 February and 7 March 2021, that he had not presented evidence proving that he had established significant contacts with the children, and that his rights as a putative parent had not attached. The order then stated, "No further notice is required pursuant to section 9–27–316(h)(4)(D) of the Arkansas Code."[2]

_____

[1]The domestic-relations proceeding was ultimately dismissed in November 2023 for lack of prosecution.

[2]As DHS notes in its brief, the termination order is confusing because it purports to terminate Hill's parental rights while also finding that Hill's parental rights as the putative father had not attached and that no further notice was necessary. According to Ark. Code Ann.§ 9–27–341(b)(3)(B)(x)(d)(2) (Supp. 2025), if a court finds that the rights of the putative parent have not attached to the juvenile, the court shall dismiss the putative parent from the petition to terminate parental rights and enter an order finding that no further notice is due to the putative parent. Parental rights of a putative parent cannot be terminated unless his or her rights have attached. *Id*. at (x)(*a*)(*3*). In other words, after finding that Hill's rights had not attached, the court should have dismissed him from the case instead of terminating his parental rights. Regardless, the dependency-neglect proceeding is closed and cannot be reopened. *See Hill*, *supra*. DHS suggests that Hill's avenue for recourse therefore cannot be found in the dependency-neglect proceeding and is instead in the adoption proceeding, where he can assert his parental status and challenge the adoption.

On 20 May 2022, the Cortezes, who were the children's foster parents (and their maternal aunt and uncle), filed a petition to adopt MC1 and MC2 in the dependency-neglect proceedings. They also initiated a separate adoption proceeding.

In the dependency-neglect proceeding, the circuit court granted the adoption and ordered the case closed on 27 July 2022. The case-closure order made the following finding: "Court hereby transfers the adoption to the Probate Division and closes its case, and no further reviews shall be conducted in this matter. The Arkansas Department of Human Services shall close its case." The court also entered a final adoption decree on July 27 in the adoption proceeding.

On 9 January 2023, in the dependency-neglect proceeding, Hill moved to vacate the order terminating his parental rights, to set aside the adoption, and to reinstate his parental rights. In response, DHS asserted that the court should dismiss Hill's motion because of insufficiency of service of process, a lack of jurisdiction over the parties and subject matter, and a failure to state facts on which relief can be granted. DHS also argued that the motion should be dismissed because Hill had notice of the dependency-neglect proceedings and failed to establish paternity in that action. The circuit court initially granted DHS's request to dismiss Hill's motion, but it later reconsidered its decision and announced it would set a hearing on the matter.

On 12 January 2023, Hill filed the same motion to vacate the order terminating his parental rights, to set aside the adoption, and to reinstate his parental rights in the adoption proceeding. The Cortezes responded and asked the court to dismiss Hill's motion on the basis of insufficiency of process, lack of jurisdiction, and failure to state facts on which relief

4

can be granted. They also argued that setting aside the adoption would not be in the children's best interest.

On 12 September 2023, the circuit court convened a hearing that addressed both the adoption proceeding and the dependency-neglect proceeding. At the outset, the parties agreed that "the [adoption proceeding] probably doesn't do much of anything until we figure out if we get to go forward on the [dependency-neglect proceeding]." The court nevertheless heard arguments from counsel, and after hearing from DHS counsel and Hill's counsel regarding the reopening of the dependency-neglect proceeding, the court ruled in DHS's favor. The court explained that even if service on Hill was not adequate, he had actual notice when the court informed him of the dependency-neglect proceeding on 26 July 2021. The court also expressed concern over the "public policy problem of setting aside an adoption a year and a half" after it was granted. Finally, the court found that it lacked jurisdiction to reopen the case.

The court also heard from the Cortezes' counsel and Hill's counsel about setting aside the adoption. Cortezes' counsel argued the public-policy point that the court had raised. Counsel also noted that after Hill's domestic-relations proceeding was dismissed in December 2019, he did not refile his request for custody until March 2021, so "he went a significant period of time knowing he was not seeing these children, knowing that he could come to court and file, and choosing not to do so." Counsel explained that Hill had not seen the children since August 2018 and that they "would not even know [him]." The circuit court concluded, "I am going to make the same ruling I did before. I think the public policy argument is even stronger now."

5

In the dependency-neglect proceeding, the circuit court entered an order that denied and dismissed Hill's motion, finding:

> Based on the evidence, arguments of counsel, pleadings filed herein, and considerations of public policy, the Court finds and orders that this matter is closed; that the movant Dustin Hill was provided sufficient notice of these proceedings including by warning order and actual notice; that the Court is not authorized to reopen this matter because the juveniles have been adopted, are no longer dependent-neglected, and are not in the Department's custody; and public policy does not support overturning the termination order or the subsequent adoption.

No written order was entered in the adoption proceeding.

Hill appealed the dependency-neglect case to this court, and we affirmed the circuit court's ruling that it lacked authority to reopen the dependency-neglect case, citing *Young v. Arkansas Department of Human Services*, 2012 Ark. 334 (holding that once a child is given a permanent placement and the dependency-neglect case is closed, there is no jurisdiction under the Juvenile Code to reopen the case). *See Hill v. Ark. Dep't of Hum. Servs.*, 2024 Ark. App. 247, 687 S.W.3d 871 (*Hill I*). This court's mandate issued on 30 April 2024.

In September 2024, Hill requested a scheduling order or a hearing date in the adoption proceeding, and the court scheduled a hearing for 24 January 2025. On 31 October 2024, the Cortezes moved for summary judgment. They argued that because this court had affirmed the lower court's ruling that it did not have jurisdiction to reopen the dependency-neglect proceeding, the finding that Hill's parental rights had not attached was still in place; therefore, his consent to the adoption was not required, nor was he entitled to notice of the adoption hearing. The Cortezes asked the court to dismiss his motion, arguing a lack of jurisdiction pursuant to Ark. R. Civ. P. 60 and a failure to state facts on which relief could be granted.

6

Hill responded that the Cortezes were ignoring that his legal paternity rights had been established by court order and that he had not been properly served with notice of the dependency-neglect proceedings. He alleged that DHS had not performed its due diligence in attempting to serve him.

Hill also noted that the order terminating his rights in the dependency-neglect proceeding stated that he "HAS NOT established significant contacts sufficient for Mr. Hill's rights as a putative father to attach." (Emphasis in original.) But as he asserted above, he was not a putative father because he had been adjudicated the children's father in a separate proceeding. He argued that this case "presents a procedural loophole that, if upheld, would potentially trample the fundamental rights of a natural parent to be heard on an adoption." Hill acknowledged that this court had affirmed the ruling that the circuit court could not reopen the dependency-neglect proceeding, but he asserted that holding meant "[h]e must have an avenue to be heard on his due process claims in this case."

The circuit court convened a hearing on 24 January 2025. The parties first discussed the *Hill I* opinion with the court, and the Cortezes' attorney remarked that this court had taken "the easy way out" by deciding the case on one matter (jurisdiction) "without addressing anything else." On the summary-judgment motion, counsel argued that because the dependency-neglect proceeding had not been reopened, Hill had no parental rights to the children and therefore no standing in the adoption proceeding. Counsel also explained that it had been almost three years since the adoption petition had been granted.

Hill's counsel first moved to incorporate the transcript and circuit court rulings from *Hill I* into the record, which was done without objection. Next, counsel argued,

7

> [I]f [Hill] is the natural father and if he did not get actual notice and if the Court of Appeals does review that issue and agree with me that it wasn't sufficient for actual notice and service was not effected . . . then the fact that the juvenile case can't be reopened cannot be a bar [for] him to come seek recourse in the probate case. Because, otherwise, he would have nowhere to get his due process rights in effect and have the adoption of his kids set aside.

Counsel also asserted that finding Hill did not have standing would be a violation of his due-process rights.

Finally, DHS counsel agreed that Hill did not have standing in the adoption proceeding and also argued that this court's decision in *Hill I* "collaterally estops [Hill] from now coming to the probate case asking for the exact same thing." In response to the collateral-estoppel argument, Hill's counsel asserted, "[I]f that is the case, that is unconstitutional because it leaves him with no recourse to pursue his rights."

The court stated from the bench that it was ruling in favor of the Cortezes and found that "all the rulings that I made in the [dependency-neglect] case, attach those to this order. I am going to make those same findings again." The court's written order included the following findings:

> 3. The Court hereby adopts the findings of fact and conclusions of law that it set forth at the September 12, 2023 hearing. Such findings being as follows:
>
> a. That Dustin Hill had actual knowledge that a DHS matter was pending as the Court told Mr. Hill in July 2021 that the Court had changed the goal to termination and relative placement, that a hearing was set for October 18, 2021 in the DHS matter and that Mr. Hill needed to be there if he had any interest.
>
> b. That it would be a violation of public policy to set aside an adoption a year and a half after it was entered as it would be significant disruption to the minor children. The Court finds that Mr. Hill had participated in a domestic relations case prior to the dependency-neglect case and in the domestic relations case no visitation was ordered. The Court

8

further finds that Mr. Hill's petition in the domestic relations case was dismissed due to his failure to appear at a hearing and it had now been over five (5) years since he had seen the children.

4. The Court further finds that the public policy argument against setting aside the adoption is even stronger now as even more time has passed since Dustin Hill has seen the minor children and since the adoption of the minor children was granted.

5. Further, Petitioner Dustin Hill has no standing in this matter as his parental rights were terminated in the dependency-neglect case and therefore he was not a parent at the time that the adoption petition was filed. As the Court of Appeals has stated, this Court cannot reopen the dependency-neglect case where the termination of rights occurred.

6. Further, the Court finds that Petitioner Dustin Hill is collaterally estopped from challenging the termination of his parental rights.

7. The Court further finds that this case is not an exception to Ark. Code Ann. § 9-9-216 and therefore a decree of adoption cannot be set aside after one (1) year from the date the adoption decree was entered.

8. The requests and motions by Petitioner Dustin Hill to vacate the order terminating his parental rights, to set aside the adoption of the minor children and to reinstate his parental rights are hereby denied and dismissed.

Hill timely appealed the circuit court's order.

Summary judgment is appropriate when the pleadings, depositions, answers to interrogatories, responses to requests for admission, and affidavits show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. *Cannady v. St. Vincent Infirmary Med. Ctr.*, 2018 Ark. 35, 537 S.W.3d 259. On appeal, this court determines if summary judgment was appropriate based on whether the evidentiary items presented by the moving party leave a material question of fact unanswered. *Id.* This court views the evidence in the light most favorable to the party against whom the motion was filed, resolving all doubts and inferences against the moving

9

party.  *Id.*  We review questions of law de novo.  *Miracle Kids Success Acad., Inc. v. Maurras*, 2019 Ark. 146, 573 S.W.3d 533.

## I.  *Collateral Estoppel*

Hill first argues that the circuit court erred in finding that he was collaterally estopped from challenging the termination of his parental rights.  The doctrine of collateral estoppel bars relitigation of issues of law or fact that were actually litigated in a previous suit.  *Turcios v. Carter*, 2023 Ark. App. 476, 678 S.W.3d 802.  When an issue of law or fact is actually litigated and determined by a valid and final judgment and the determination is essential to the judgment, the determination is conclusive in a subsequent action, whether on the same or a different claim.  *Id.*  Collateral estoppel is based on the policy of limiting litigation to one fair trial on an issue.  *Id.*  To apply collateral estoppel, the following elements must be present: (1) the issue sought to be precluded must be the same as that involved in the prior litigation; (2) the issue must have been actually litigated; (3) the issue must have been determined by a valid and final judgment; and (4) the determination must have been essential to the judgment.  *Hardy v. Hardy*, 2011 Ark. 82, 380 S.W.3d 354.

Hill argues that this case is legally and procedurally "nearly identical" to *Beaver v. John Q. Hammons Hotels, Inc.*, 81 Ark. App. 413, 102 S.W.3d 903 (2003).  In *Beaver*, the claimant sought workers' compensation benefits for a compensable back injury but was denied benefits on two grounds: (1) she was not performing employment services at the time of the injury; and (2) she failed to prove that her disc herniation resulted from her slip and fall accident.  Beaver appealed both findings, and this court affirmed on the sole ground

10

that there was substantial evidence to support the Commission's finding that she was not engaged in employment services at the time she fell. The opinion did not address causation.

Beaver later sued the owner and manager of the hotel where the slip and fall occurred, and they moved for summary judgment, arguing that because the Commission had determined that Beaver had failed to prove physical harm resulting from the fall, she was collaterally estopped from litigating that issue in this action. The circuit court agreed and dismissed the claims against the hotel and its manager.

On appeal, this court held that the situation related to the "essential to the judgment" requirement of collateral estoppel and that when the circuit court bases its judgment on two alternative grounds, and an appellate court affirms the judgment solely on one of the grounds, the judgment is not conclusive in a subsequent action in which the other ground is in issue. Accordingly, this court held that the circuit court had erred in giving preclusive effect to the Commission's causation determination and that Beaver was not collaterally estopped from raising the issue of causation in her negligence action.

Hill contends that just as in *Beaver*, multiple issues were raised in his first appeal, but this court did not address most of the issues raised. Instead, this court affirmed based solely on the circuit court's lack of jurisdiction to reopen the dependency-neglect proceeding. He argues that this court should follow *Beaver* and hold that the circuit court erred in granting summary judgment based on collateral estoppel because his challenge to the termination of his parental rights was not essential to the judgment in *Hill I*.

Hill also contends that the circuit court's ruling that he was collaterally estopped from challenging the termination of his parental rights violates the Arkansas Constitution, which

11

guarantees every person the right to "a certain remedy in the laws for all . . . wrongs he may receive in his person." Ark. Const. art. 2, § 13.  He claims that not receiving proper notice of the termination proceedings violated his due-process rights, which is certainly a "wrong" contemplated by art. 2, § 13.  The circuit court was not able to redress that wrong in the dependency-neglect proceeding, and if he is collaterally estopped from moving to set aside the termination of his parental rights on due-process grounds in the adoption proceeding, he cannot proceed with the rest of his appeal and "would be denied any remedy in contravention of the Arkansas Constitution."

DHS[3] responds that Hill's argument pertains to the validity of the termination order in the dependency-neglect proceeding, but as this court ruled in *Hill I*, that proceeding cannot be reopened.  And it necessarily follows that the termination order contained within the dependency-neglect proceeding cannot now be altered, amended, or reversed.  Further, the circuit court has no authority to amend or set aside an order that is not a part of the case before it.

DHS also distinguishes *Beavers* by explaining that the plaintiff's request for relief did not require the relitigation of issues in a closed case.  In other words, it was unnecessary for Beavers to have the workers' compensation commission overturn its causation finding before she could litigate the issue in civil court, and this court never held that the workers' compensation case was closed.  DHS asserts that the facts of this case are more similar to

---

[3]DHS and the children's attorney ad litem (collectively "DHS") filed a joint response brief, and the Cortezes also filed a response brief.  To the extent that the arguments in these briefs overlap, we will refer to the arguments made by DHS.  We will refer to the Cortezes' arguments only when they differ, or add to, those made by DHS.

12

*Robinson Nursing & Rehabilitation Center, LLC v. Briley*, 2022 Ark. App. 85, 643 S.W.3d 34. In *Briley*, nursing home residents filed a class-action lawsuit against Robinson Nursing and Rehabilitation Center ("Robinson"), and as part of that ongoing litigation, the Arkansas Supreme Court held that a number of residents' claims, including Briley's, fell within the scope of a fully enforceable arbitration agreement. *Id.* (citing *Robinson Nursing & Rehab. Ctr., LLC v. Phillips*, 2019 Ark. 305, 586 S.W.3d 624). Briley filed a civil suit against Robinson, argued in part that the arbitration agreement was not valid, and asserted that the supreme court's opinion had determined only that an arbitration agreement existed but did not address his defenses to the arbitration agreement. However, this court held that the validity and enforceability of the arbitration agreement had been determined by the supreme court, that determination was essential to that decision, and Briley's claim for negligence was within the scope of the arbitration agreement. Thus, Briley was collaterally estopped from arguing that the arbitration agreement is valid in the civil suit.

As to Hill's constitutional argument, DHS contends that Hill failed to get a ruling below, so he is barred from raising the argument on appeal. Hill's counsel argued below, in response to the suggestion that collateral estoppel applied, "[M]y position is if that is the case, that is unconstitutional because it leaves him with no recourse to pursue his rights." The circuit court responded, "Fair enough. Okay. Anybody else?" DHS argues that this comment does not indicate agreement or disagreement with Hill's argument.

The Cortezes add that Hill did have the opportunity to appear and assert his custody argument in the dependency-neglect proceeding and was told by the circuit court a specific date on which to attend (18 October 2021). Hill did not appear, however, and is now

13

collaterally estopped from challenging the findings in that matter by trying to relitigate them in the adoption proceeding.

Hill insists that his constitutional argument is preserved because he raised it below, and the order granting summary judgment effectively ruled on the issue. He asserts that while the circuit court made several findings in its order, it did not explicitly state on what grounds it was granting the summary-judgment motion and dismissing his claim. And when a court does not expressly state the basis for a summary-judgment ruling, it is presumed that the ruling encompasses all the issues presented to the circuit court by the briefs and arguments of the parties. *See Windsong Enters., Inc. v. Red Apple Enters. Ltd. P'ship*, 2018 Ark. App. 39, 542 S.W.3d 177 (where the parties raised issues of fraudulent concealment, res judicata, and collateral estoppel to the circuit court, and the court's written order simply provided that the motion should be granted without stating the grounds, the appellate court must conclude that the order constituted a ruling on all of the issues raised by the parties).

We hold that Hill is collaterally estopped from challenging the termination of his parental rights. Hill is mistaken in his belief that "the decision in the prior appeal was not essential to the judgment here." This court's decision in *Hill I* that the circuit court could not reopen the dependency-neglect proceeding was absolutely essential because it was a threshold issue to addressing any of his challenges to the termination order, and pursuant to *Hill I*, any challenge to the termination order has been foreclosed. In addition, as DHS argued, the probate court would have no authority to set aside or amend an order entered in another case, especially a closed case.

As to Hill's constitutional argument, even if we considered the exchange with the court sufficient to constitute a ruling, he has greatly expanded his argument on appeal. Below, he made a one-sentence conclusory argument that applying collateral estoppel would be "unconstitutional." On appeal, he cites the Arkansas Constitution, art. 2, § 13 and asserts a violation of his due-process rights. A party cannot change the grounds for an objection or motion on appeal but is bound by the scope and nature of the arguments made before the circuit court. *Washington Cnty. v. Coger*, 2025 Ark. App. 145, 709 S.W.3d 827.

In addition, Hill's argument that the court's order constituted a ruling on all issues is unavailing. The law he cites applies to situations in which the court specifies no reason whatsoever for its ruling, such as "the court finds and determines that the Upton Entities' motion for partial summary judgment should and hereby is granted." *Windsong*, 2018 Ark. App. 39, at 4, 542 S.W.3d at 179–80. Here, the circuit court stated several reasons for its ruling, including actual knowledge, public policy, and collateral estoppel. So the law cited by Hill is inapplicable.

## II. *Proper Notice*

Hill next argues that he was not properly served and did not have adequate notice of the termination petition or proceedings. In its order, the circuit court found that

> Dustin Hill had actual knowledge that a DHS matter was pending as the Court told Mr. Hill in July 2021 that the Court had changed the goal to termination and relative placement, that a hearing was set for October 18, 2021 in the DHS matter and that Mr. Hill needed to be there if he had any interest.

In its September 2023 findings, which were incorporated into the order, the court found that Hill "was provided sufficient notice of these proceedings including by warning order and actual notice."

15

Hill first asserts that the circuit court applied the wrong service requirements to him. He argues that because he was found to be the children's "legal father" before the initiation of the dependency-neglect proceeding, he was "required to be served pursuant to Ark. R. Civ. P. 4 at some point during the proceedings, pursuant to A.C.A. § 9-27-341." The circuit court never applied Ark. R. Civ. P. 4, however, and found instead that Hill had actual knowledge that the dependency-neglect proceeding was pending.

Hill also asserts that DHS did not perform its due diligence in trying to locate and serve him. Rule 4(f)(1) authorizes service by warning order if it appears from the affidavit of a party or his or her attorney that "after diligent inquiry, the identity or whereabouts of a defendant remains unknown." Ark. R. Civ. P. 4(f)(1). In DHS's affidavit for warning order, it states only two actions to attempt service: speaking with the children's mother, who said he might be in Ohio, and contacting OCSE to see if it had contact information for Hill. DHS did not conduct a basic CourtConnect search, did not contact the clerk of the court, and did not conduct any sort of online search for Hill to determine his whereabouts.

Next, Hill contests that he had actual notice of the dependency-neglect proceedings. He reiterates that DHS was required to serve him in accordance with the rules of civil procedure and that it failed to do so regardless of actual notice given to him. He also disputes that he was given actual notice sufficient to satisfy due-process requirements at the July 2021 domestic-relations proceeding. In support, he cites *Clark v. Clark*, 2017 Ark. App. 612, 535 S.W.3d 282, in which this court held that the parents' due-process rights had been violated when they were not given notice of the adoption petition filed by their child's legal

16

guardians (and paternal grandparents). The grandparents claimed that the dependency-neglect proceedings gave the parents adequate notice of the adoption petition, but this court disagreed and held that due process requires notice reasonably calculated to apprise them of the pendency of the adoption action and to afford them an opportunity to respond.

According to Hill, *Clark* highlights the importance that actual notice be specific and clear when it comes to the termination of parental rights. Hill contends that the notice he received at the July 2021 hearing was not clear. He was advised that the goal of the case had been changed to termination and that he needed to enter an appearance, but he was not informed that if he did not appear his rights could be terminated. Further, the fact that he had an attorney present with him when he learned of the dependency-neglect case does not mean that he was counseled on the nature of the other case. Like the parents in *Clark*, Hill argues, he had no actual notice that his rights had been terminated until after the termination proceeding and the adoption proceeding had concluded. He contends that this is not sufficient notice to satisfy his due-process rights.

In response, DHS asserts that in addition to Hill's arguments being barred by collateral estoppel, his service arguments cannot be addressed by the probate division of the circuit court because it has no jurisdiction in the now closed dependency-neglect proceeding. *See Edwards v. Nelson*, 372 Ark. 300, 275 S.W.3d 158 (2008) (holding that the civil division of circuit court had no original jurisdiction to decide the validity of an appointment order that was entered by the probate division of circuit court). DHS explains that the juvenile division of the circuit court had original jurisdiction over service issues in

17

the dependency-neglect case, it found that service had been perfected, and the case is now closed.

We hold that the probate division of the circuit court has no jurisdiction to address service complaints in the now closed dependency-neglect proceeding and that Hill was not entitled to any notice of the adoption proceeding because he had no parental rights that had attached. We also note that in his pleadings below, Hill acknowledged that he did have actual notice of the dependency-neglect proceeding. The general rule is that a party is bound by his or her pleadings and the allegations therein and cannot maintain an inconsistent position on appeal. *See Killingsworth v. Dittmar*, 2018 Ark. App. 294, 552 S.W.3d 1 (appellant could not argue on appeal that her relocation with the parties' children did not constitute a material change of circumstances where her own pleadings indicated that the relocation did constitute a material change).

### III. *Standing*

As a reminder, the circuit court found that Hill "has no standing in this matter as his parental rights were terminated in the dependency-neglect case and therefore he was not a parent at the time that the adoption petition was filed." Hill argues,

> Because Appellant's parental rights were not legally terminated, and because Appellant was declared by the Circuit Court to be the Minors' legal father, Appellant was the Minors' parent at the time the adoption petition was filed in May of 2022. Accordingly, the Court should find that he has standing to challenge the decree of adoption as the legal father of the Minors at the time of its entry.

DHS responds that if Hill's rights are considered terminated by the termination order, then the circuit court did not err in finding that he lacked standing to challenge the adoption.

18

In the alternative, DHS contends that if Hill's rights were not terminated because he did not have rights that had attached, we should nevertheless still affirm the circuit court's order under de novo review. While Hill could attempt to challenge the adoption under Ark. Code Ann. § 9-9-206(a)(2)(E) (Repl. 2020), which requires the consent of the father if a court has adjudicated him to be the legal father before the filing of the petition, DHS asserts that if Hill made this argument, it would fail.

Arkansas Code Annotated section 9-9-207(a)(2) (Repl. 2020) provides that a parent's consent is not required for adoption "if the parent for a period of at least one (1) year has failed significantly without justifiable cause (i) to communicate with the child or (ii) to provide for the care and support of the child as required by law or judicial decree[.]" Here, Hill readily admits—and the circuit court found—that Hill has had no contact with these children for at least five years, which means that his consent was never required and that he was not entitled to notice.

We agree that Hill has no standing to contest the adoption. If the circuit court terminated his parental rights in the dependency-neglect proceeding, then he was divested of all legal rights to the children, including the right to withhold consent to an adoption. If the termination order did not terminate his parental rights because those rights had never attached in the dependency-neglect proceeding, Hill could not prove his consent was required in the adoption proceeding pursuant to Ark. Code Ann. § 9-9-207(a)(2). In other words, Hill could not demonstrate any genuine issue of material fact left to be litigated.

19

## IV. *Public Policy*

At the January 2025 hearing, the circuit court asked Hill's counsel about the public-policy implications of overturning an adoption after several years, and counsel responded, "I can understand the argument and sympathize with it a little bit, but this Court is still going to get to look at best interest of the child and abandonment issues and make a decision at a final adoption hearing." Counsel continued,

> I do think that, just as a matter of well, public policy says they've been there three years so we just can't do this anymore, I think that's a little mistaken. I think if the Court wasn't going to be allowed to hear about best interest of the child and everything, then maybe that makes more sense, but the Court is. And the Court can—I think that judges can make that determination. And it does, it puts my client at disadvantage, certainly, that he hasn't been around in that time. He's got a lot to explain to this Court to get over that.
>
> But, again, we are more asking for the due process of this. Let him have his day to defend it and try to convince the Court that he is best for his kids. They are his kids, after all.

In its March 2025 order, the court found that it would be a violation of public policy to set aside the adoption because it would be a significant disruption to the children and Hill had not seen the children in over five years.

Hill argues that in finding that public policy did not support overturning the termination order or the subsequent adoption, the circuit court disregarded the importance of a parent's fundamental rights. He asserts that he was seeking a right to be heard on setting aside the adoption decree and that the circuit court could entertain that request without compromising the best interest of the children. He also argues, "To the extent the Trial Court's ruling was that the [adoption] matter could not be reconsidered or reopened based on public policy, such an order is unconstitutional." He concludes that the "public policy

20

interests in denying [him] a chance to be heard on the adoption of his children are outweighed by his fundamental rights as a parent and a policy in favor of due process."

DHS argues in response that the circuit court did not err in finding that it was against public policy to set aside the adoption because there is legal authority to support the court's ruling. In its order, the circuit court cited Ark. Code Ann. § 9-9-216 (Repl. 2020), which provides:

> Subject to the disposition of an appeal, upon the expiration of one (1) year after an adoption decree is issued, the decree cannot be questioned by any person including the petitioner, in any manner upon any ground, including fraud, misrepresentation, failure to give any required notice, or lack of jurisdiction of the parties or of the subject matter unless, in the case of the adoption of a minor, the petitioner has not taken custody of the minor or, in the case of the adoption of an adult, the adult had no knowledge of the decree within the one-year period.

Ark. Code Ann. § 9-9-216(b). DHS asserts, "Clearly, it is a matter of public policy that we do not disrupt a juvenile's life by potentially removing him or her from people that have been considered parents for over a year."

DHS also argues that Hill did not obtain a ruling on any constitutional argument. And even if he had, this court has held that a parent does not have substantial protection under the due-process clause when they have failed to participate in the rearing of his or her child. *In re Adoption of J.L.T.*, 31 Ark. App. 85, 788 S.W.2d 494 (1990) (rejecting the biological father's argument that he was entitled to notice of the adoption under the due process clause because he had failed to demonstrate a custodial, personal, or financial relationship with the children).

We hold that Hill did not preserve any constitutional argument; he did not argue below that the public policy against setting aside adoptions is unconstitutional, and on appeal

he presents only one conclusory sentence on the subject. We also hold that Hill's public-policy argument is not supported by the law. Our supreme court has held that the legislature's one-year rule must be applied strictly in order to "ensure adoption decrees obtained under the law possess that necessary and required finality so that an adoptive parent is not freed of the parental obligations he or she has willingly undertaken." *Martin v. Martin*, 316 Ark. 765, 875 S.W.2d 819 (1994). In quoting commentary from the Uniform Revised Adoption Act, which discusses the importance of the one-year limit, the *Martin* opinion further states, "the policy of stability in a family relationship . . . outweighs the possible loss to a person [the natural parent] whose rights are cut off [even in instances of] fraud and ignorance." *Id*. at 770–71, 875 S.W.2d at 822. Thus, contrary to Hill's assertion, public policy favors the rights of adoptive parents and minor children to establish a stable and secure family relationship.

Affirmed.

VIRDEN and BARRETT, JJ., agree.

*Bradley Hull* and *Michael Graugnard*, for appellant.

*Tasha Terry*, for separate appellees Kimberly and Daniel Cortez.

*Ellen K. Howard*, for separate appellee Arkansas Department of Human Services.

*Dana McClain*, attorney ad litem for minor children.